UNITED STATES of America,
Appellant,

v.

EVERETT, George, Appellee.

No. 81–2644.

United States Court of Appeals,
Third Circuit.

Submitted Under Rule 12(6) on
Oct. 28, 1982.

Decided Feb. 15, 1983.

Peter F. Vaira, Jr., U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief, Appellate Section, Judy L. Goldstein, Asst. U.S. Atty., Philadelphia, Pa., for appellant.

Before ADAMS, GARTH, Circuit Judges, and GERRY,* District Judge.

## OPINION OF THE COURT

GERRY, District Judge:

Appellee George Everett was convicted by a jury of attempting to distribute the drug phenyl-2-propanone (P-2-P) in violation of 21 U.S.C. § 846 (1976). The district court granted Everett's motion for judgment of acquittal on the ground that it was legally impossible for Everett to commit the crime. *United States v. Everett*, 520 F.Supp. 46 (E.D.Pa.1981). The United States appeals from the judgment of acquittal. We will reverse.

### FACTS AND PROCEEDING BELOW

An undercover agent from the Drug Enforcement Administration (DEA) arranged to purchase metamphetamine and P-2-P from Mr. Ralph Horan. Both metamphetamine and P-2-P are non-narcotic controlled substances, *see* 21 U.S.C. § 812(c) Sch. I, II (1976); P-2-P has no other use than in the manufacture of metamphetamine. On February 4, 1981, the government arrested Horan after he sold the agent metamphetamine but before the P-2-P deal could be consummated. Horan identified Everett as his source for the P-2-P and metamphetamine, said that the P-2-P was still in Everett's hands, and agreed to cooperate in closing the P-2-P deal.

Horan then had several telephone conversations with Everett which were tape recorded by the DEA. In those conversations the two set up a meeting at which Horan would buy six pints of Everett's P-2-P at $1250 per pint. Horan also informed Everett that Horan's "client" wanted to inspect a sample of the P-2-P before giving Everett the money. Everett agreed to provide a sample.

At the appointed time Horan, unaccompanied, entered Everett's house while DEA agents posing as the "client" remained outside in a car. Everett gave Horan one pint of the liquid as a sample. Horan took the pint to the waiting agents who performed a quick field test. The test indicated that the liquid was P-2-P. DEA agents then entered the house and placed Everett under arrest.[1] Once in custody Everett gave a statement to DEA agents. He identified the substance as P-2-P and said that he had gotten it from Mr. Joseph Jackson, who in turn had obtained it from someone known to Everett only as Frank. App. at 150a, 159a; Trial Transcript of May 22, 1981, at 60.

The grand jury returned an indictment charging Everett with distribution and possession of P-2-P in violation of 21 U.S.C. § 841(a) (1976).[2] Subsequent tests by the DEA revealed, however, that despite strong physical resemblance to P-2-P the sample pint of liquid was not P-2-P or any other controlled substance. The government then obtained a superseding indictment of two

---

* Hon. John F. Gerry, United States District Judge for the District of New Jersey, sitting by designation.

1. The agents also searched Everett's house and found four or five pints of the same liquid. These pints were not offered into evidence at trial.

2. Section 841(a) provides in pertinent part:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

. . . .

21 U.S.C. § 841(a) (1976).

counts under 21 U.S.C. § 846 (1976).[3] Count I charged that Everett had conspired with Horan to distribute the metamphetamine sold to the DEA agent. Count II charged that Everett did knowingly and intentionally attempt to distribute P-2-P.

Everett pled not guilty to both counts. During trial the government introduced the tapes and the testimony of Horan and the agents. A chemist for the DEA testified that the sample pint of liquid was not P-2-P. Everett did not testify or call any witnesses. In his charge to the jury, the trial judge emphasized that to convict on Count II it must find beyond a reasonable doubt that Everett believed the pint of liquid to be P-2-P.[4]

The jury acquitted Everett on Count I. It convicted him on Count II of attempting to distribute P-2-P. Everett then moved for judgment of acquittal on Count II. The trial judge held that there was sufficient evidence in the record to support the jury's conclusion that Everett believed the pint of liquid to be P-2-P. Nonetheless, the trial judge set aside the verdict of guilty on Count II and entered judgment of acquittal on the ground that there could be no attempt as the liquid distributed by Everett was not P-2-P or any other controlled substance.

■ The government now takes an appeal of right pursuant to 18 U.S.C. § 3731 (1976) from the entry of judgment of acquittal after a jury verdict of guilty. *Government of the Virgin Islands v. Christensen*, 673 F.2d 713, 717–19 (3d Cir.1982); *see United States v. Wilson*, 420 U.S. 332, 352–53, 95 S.Ct. 1013, 1026–27, 43 L.Ed.2d 232 (1975). We have jurisdiction under section 3731 to hear the appeal. *United States v. Jannotti*, 673 F.2d 578, 580 n. 1 (3d Cir.) (en banc), *cert. denied*, 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982).[5]

---

**3.** Section 846 provides:

> Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment and fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 846 (1976).

**4.** The trial judge gave this summary during his charge on Count II:

> Now, in order for you to convict Mr. Everett of this charge you would have to find that he in fact did some act to bring about—that he acted in a way to bring about—he acted in a way to violate the law in the distribution of P-2-P; that he did it knowingly and intentionally. And you would have to find beyond a reasonable doubt that he believed the substance to be P-2-P.
>
> It is for you to analyze the evidence, and determine whether or not he believed the substance to be P-2-P, or whether this was merely a con, a ripoff, or an attempt to rip off Mr. Horan.

Trial Transcript of May 22, 1981, at 59–60.

**5.** No brief has been filed on Everett's behalf. A review of the record reveals that pursuant to Fed.R.App.P. 3(d) the clerk of the district court served notice of the filing of the government's timely notice of appeal upon Everett's retained trial counsel, Warren R. Hamilton, as counsel of record. Hamilton did not subsequently file a formal appearance as required by Rules of the United States Court of Appeals for the Third Circuit 9(2). He made a de facto appearance on the appellate scene, however, when he consented to the government's motion for permission to file its brief out of time. The government filed its brief on February 18, 1982. After no appellee's brief had been filed within thirty days as required by Fed.R.App.P. 31(a), the government moved to have the appeal heard on its brief only. On May 26, 1982, having received no reply to the government's request, we denied the motion. Instead we issued an order stating that unless Everett filed and served his brief within ten days we would schedule the case for disposition on the government's brief only. Pursuant to Fed.R.App.P. 45(c), that order was sent only to Hamilton. We received no response prior to the submission of this case.

If an appellee after proper notice fails to file a brief, then we may decide the case on the brief of the appellant only. Fed.R.App.P. 31(c); *see, e.g., Ray·v. Robinson*, 640 F.2d 474, 476 (3d Cir.1981); *see also Klobuchir v. Pennsylvania*, 639 F.2d 966, 970–71 (3d Cir.), *cert. denied*, 454 F.2d 1031, 102 S.Ct. 566, 70 L.Ed.2d 474 (1981); *Government of the Virgin Islands· v. James*, 621 F.2d 588, 589 (3d Cir.1980) (per curiam) (argued on government's brief only); *United States v. Pincourt*, 159 F.2d 917, 929–30 (3d Cir.1947). A criminal defendant represented by counsel at trial receives constitutionally adequate notice when his trial counsel receives actual notice of the government's appeal. *See generally In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948). Counsel of record at trial remains counsel of record for

## DISCUSSION

In his motion for judgment of acquittal, Everett claimed that the fact that the sample liquid was not P-2-P or any other controlled substance prevented his conviction under 21 U.S.C. § 846 (1976). He argued that based on our holding in *United States v. Berrigan,* 482 F.2d 171 (3d Cir.1973), it was legally impossible for him to violate the statute. The district court held that it was required under *Berrigan* to reverse Everett's conviction. 520 F.Supp. at 50.

In *Berrigan* a federal prisoner tried to smuggle several letters out of his penitentiary using as a courier another prisoner on study-release. The warden learned of the prisoner's first letter; the courier carried all subsequent letters with the knowledge and consent of the warden. The prisoner was then convicted of attempting to send the letters from a federal penal institution without the knowledge and consent of the warden. 18 U.S.C. § 1791 (1976); 28 C.F.R. § 6.1 (1981).[6] The prisoner appealed his convictions for the passing of all letters but the first, arguing that the government had failed to prove all elements of the crime charged. 482 F.2d at 184. We reversed the convictions, holding that the government did not and could not prove absence of knowledge and consent of the warden "because it was a legal impossibility." *Id.* at 189.

*Berrigan* does not control the result in this case. Unlike *Berrigan,* this case involves a statute by which Congress intended to punish attempts even when completion of the attempted crime was impossible.

### Congressional Intent

The problem confronting this court in *Berrigan* was that of statutory interpretation. We refused to uphold the prisoner's convictions on any basis other than the statute enacted by Congress. "Federal criminal law is purely statutory, there is no federal common law of crimes." 482 F.2d at 185. We therefore turned to "the rudiments of the law of attempt" for the basis of our decision. 482 F.2d at 187. We held that the prisoner's conduct did not amount to an attempt under 18 U.S.C. § 1791 (1976). We stated in conclusion:

> Congress has not yet enacted a law that provides that intent plus act plus conduct constitutes the offense of attempt irrespective of legal impossibility. Until such time as such legislative changes in the law take place, this court will not fashion a new non-statutory law of criminal attempt.

*Id.* at 190.[7]

In this case we are confronted with the interpretation of another attempt provision,

---

purposes of the service of the notice of appeal unless the clerk of the district court is otherwise notified.

Because the record is inadequate to resolve the question of whether Everett received adequate assistance of counsel after his acquittal, we do not consider it. Everett may raise any such claim only in a collateral proceeding under 28 U.S.C. § 2555 (1976) at which time the district court may develop an appropriate factual record. *United States v. Sturm,* 671 F.2d 749, 750–51 (3d Cir.1982) (per curiam); *United States v. Garcia,* 544 F.2d 681, 684 n. 1 (3d Cir.1976).

6. 18 U.S.C. § 1791 (1976) provides:
Whoever, contrary to any rule or regulation promulgated by the Attorney General, introduces or attempts to introduce into or upon the grounds of any Federal penal or correctional institution or takes or attempts to take or send therefrom anything whatsoever, shall be imprisoned not more than ten years.
28 C.F.R. § 6.1 (1981) provides:

The introduction or attempt to introduce into or upon the grounds of any federal penal or correctional institution or the taking or attempt to take or send therefrom anything whatsoever without the knowledge and consent of the warden or superintendent of such federal penal or correctional institution is prohibited.

7. In reaching that conclusion, we were referring to proposals then before Congress to create a federal general attempt statute applicable to every federal offense, akin to the general conspiracy provision, 18 U.S.C. § 371 (1976). 482 F.2d at 186, 189. The proposed attempt provision, § 1001, stated that impossibility would not be a defense. Final Report of the National Commission on Reform of the Federal Criminal Laws § 1001(1) (1971). Explaining the addition of the provision, the Commission stated that the question of whether impossibility was a defense to a charge of attempt under federal law had not been directly addressed in the federal courts, I Working Papers of the

section 406 of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 846 (1976). We cannot rest on *Berrigan's* interpretation of what Congress meant by the word "attempts" when it enacted 18 U.S.C. § 1791 (1976). Instead we must examine legislative intent anew. If Congress chose in enacting 21 U.S.C. § 846 (1976) to define "attempt" to punish efforts to violate section 841 regardless of impossibility, that intent governs.

■ When Congress used the word "attempt" in section 846 it used a common law term. Impossibility, of course, is also a creation of the common law, originally expounded as part of the definition of "attempt." Generally, where Congress uses a common law term in a federal criminal statute without otherwise defining it, Congress is presumed to adopt the meaning given that term at common law. *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 249, 96 L.Ed. 288 (1952); *United States v. Nedley,* 255 F.2d 350, 357 (3d Cir.1958). Of course, Congress is not compelled to adopt common law concepts when it creates a statutory crime. *United States v. Bailey,* 444 U.S. 394, 406, 100 S.Ct. 624, 632, 62 L.Ed.2d 575 (1980). If Congress uses a term in a criminal statute which has no widely accepted common law meaning at

the time of enactment, the term should be given the meaning consistent with the purpose of the enactment and its legislative history. *United States v. Turley,* 352 U.S. 407, 411–13, 77 S.Ct. 397, 399–400, 1 L.Ed.2d 430 (1957). Even if the word had a generally accepted common law meaning, the courts will not impose that meaning if there are "grounds for inferring an affirmative instruction from Congress" to define it otherwise. *Morissette,* 342 U.S. at 273, 72 S.Ct. at 255. For example, the courts should not infer congressional adoption of a common law definition plagued by "hair-splitting distinctions." *Bailey,* 444 U.S. at 406–07, 100 S.Ct. at 633.

■ We are convinced that Congress intended to eliminate the defense of impossibility when it enacted section 846.[8] First, when Congress enacted section 846 the doctrine of impossibility had become enmeshed in unworkable distinctions and was no longer widely accepted as part of the meaning of "attempt" at common law. Second, the legislative history and purpose of section 846 provide grounds for inferring an affirmative instruction from Congress to define "attempt" to exclude the defense of impossibility.

National Commission on Reform of the Federal Criminal Laws 360 (1970), and that § 1001 was the Commission's attempt to anticipate the question, *id.,* and provide a uniform answer, Study Draft of a New Federal Criminal Code § 1001 comments (1970). *See Berrigan,* 482 F.2d at 189 (proposed provision designed "to fill an apparent void in existing law").

Congress has not enacted § 1001 or any other general attempt statute. Of course, the lack of such a general provision does not alter our responsibility to ascertain congressional intent where, as here, Congress has enacted a provision punishing attempts to commit a specific federal offense.

**8.** We are thus in accord with the other federal courts which have considered whether Congress intended to allow the defense of impossibility when it used the word "attempt" in section 846. Those courts did not rely on the legislative history. When faced with defendants who had tried to distribute or possess a substance which the defendants believed to be controlled but which in fact was uncontrolled, those courts did conclude that impossibility is

no defense under section 846. *United States v. Quijada,* 588 F.2d 1253 (9th Cir.1978); *United States v. Hough,* 561 F.2d 594 (5th Cir.1977); *United States v. Korn,* 557 F.2d 1089 (5th Cir. 1977); *United States v. Marin,* 513 F.2d 974 (2d Cir.1975); *United States v. Deangelis,* 430 F.Supp. 327 (D.P.R.1976); *United States v. Heng Awkak Roman,* 356 F.Supp. 434 (S.D.N. Y.), *aff'd,* 484 F.2d 1271 (2d Cir.1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1565, 37 L.Ed.2d 874 (1974); *see also United States v. Green,* 511 F.2d 1062, 1072 (7th Cir.), *cert. denied,* 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404 (1975); *cf. United States v. Oviedo,* 525 F.2d 881 (5th Cir.1976) (insufficient evidence).

We also note that impossibility has been held to be no defense on similar facts at common law, *People v. Siu,* 126 Cal.App.2d 41, 271 P.2d 575 (1954), and under state attempt statutes, *State v. McElroy,* 128 Ariz. 315, 625 P.2d 904 (1981); *State v. Gillespie,* 428 N.E.2d 1338 (Ind. App.1981); *People v. Reap,* 68 A.D.2d 964, 414 N.Y.S.2d 775 (1979); *Weimar v. State,* 556 P.2d 1020 (Okl.Cr.App.1976).

When Congress enacted section 846 in 1970, the doctrine of impossibility had become mired in fine distinctions and had lost whatever acceptance at common law it may have possessed when the statute considered in *Berrigan* was first enacted in 1930. A few years before, the Supreme Court had questioned whether the doctrine of impossibility "with all its subtleties" had any "continuing validity" in the law of criminal attempt. *Osborn v. United States*, 385 U.S. 323, 333, 87 S.Ct. 429, 434, 17 L.Ed.2d 394 (1966). The doctrine had become "a source of utter frustration," plunging the state courts into a "morass of confusion." *United States v. Thomas*, 13 U.S.C.M.A. 278, 286–87, 32 C.M.R. 278, 286–87 (1962). Attempts to apply the doctrine had resulted in "considerable conflict of authority" among common law courts. *Id.; accord United States v. Hair*, 356 F.Supp. 339, 342 (D.D.C. 1973). A 1970 annotation of the common law found in the cases "a definite trend toward restricting or eliminating the defense." Annot., 37 A.L.R.3d 375, 381 (1970). For example, one state court surveyed the "confused mass of law throughout the country" and rejected the defense of impossibility, saying:

> Our examination of these authorities convinces us that the application of the defense of impossibility is so fraught with intricacies and artificial distinctions that the defense has little value as an analytical method for reaching substantial justice. . . . We think the effort to compartmentalize factual patterns into these categories of factual or legal impossibility is but an illusory test leading to contradictory, and sometimes absurd, results.

*State v. Moretti*, 52 N.J. 182, 189, 244 A.2d 499, 503, *cert. denied*, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968); *accord Hair*, 356 F.Supp. at 342; *Thomas*, 13 U.S.C.M.A. at 286, 32 C.M.R. at 286. Another state court, bound by precedent to apply the doctrine, criticized the distinctions between types of impossibility as "more theoretical than practical" and urged the state legislature to adopt a "progressive and more modern view." *People v. Rollino*, 37 Misc.2d 14, 18–19, 22, 233 N.Y.S.2d 580, 584–86 (1962); *accord Booth v. State*, 398 P.2d 863, 872 (Okl.Cr.App.1964). By 1970 the abolition of the defense of impossibility had become "the overwhelming modern position." I Working Papers of the National Commission on Reform of the Federal Criminal Laws 360 (1970).

It was with this backdrop that the President in 1969 proposed the first provision to make criminal an attempt to commit an offense under the drug laws.[9] Section 504 of the President's proposal punished attempt in language identical to that of the present 21 U.S.C. § 846 (1976).[10] Bills adopting the President's proposal and containing the provision were introduced in both the House and the Senate. H.R. 13472, 91st Cong., 1st Sess. § 504 (1969); H.R. 13743, 91st Cong., 1st Sess. § 504 (1969); S. 2637, 91st Cong., 1st Sess. § 504 (1969).

The Senate acted first. In the Senate-passed bill the attempt provision was amended to substitute the word "endeavor" for "attempt." S. 3246, 91st Cong., 2d Sess. § 504 (1970). The Senate report left no doubt that the change was meant to abolish the defense of impossibility:

**9.** *Drug Abuse Control Amendments—1970: Hearings before the Subcommittee on Public Health and Welfare of the House Committee on Interstate and Foreign Commerce, House of Representatives, 91st Congress, 2d Session, on H.R. 11701 and H.R. 13743,* 91st Cong., 2d Sess. 92 (1970) (statement of John W. Dean III, Associate Deputy Attorney General for Legislation, Department of Justice); *Controlled Dangerous Substances, Narcotics and Drug Control Laws: Hearings before the Committee of Ways and Means, House of Representatives,* 91st Cong., 2d Sess. 223 (1970) (statement of John

Ingersoll, Director of the Bureau of Narcotics and Dangerous Drugs) [hereinafter "Ways and Means Committee Hearings"]; *see Bifulco v. United States*, 447 U.S. 381, 399, 100 S.Ct. 2247, 2258, 65 L.Ed.2d 205 (1980).

**10.** Proposed Bill § 504, *reprinted in* Staff of the Committee on Ways and Means, House of Representatives, Materials Prepared by the Administration Relating to Proposed Legislation to Regulate Controlled Dangerous Substances and Amend Narcotics and Drug Laws 73 (Committee Print 1970).

The Committee has used the word "endeavor" in section 504 to avoid the maze of hypertechnical defenses which have arisen over the years with respect to criminal attempts, and to make clear that the section is interested [*sic*] to reach any effort or essay to accomplish the evil purposes that the Act is designed to prevent. *U.S. v. Russell,* 255 U.S. 138, 143 [41 S.Ct. 260, 261, 65 L.Ed. 553]; *Osborn v. U.S.,* 385 U.S. 323, 332–333 [87 S.Ct. 429, 434–35, 17 L.Ed.2d 394].

S.Rep. No. 91–613, 91st Cong., 1st Sess. 26 (1969).[11]

In the House the Senate-passed bill eventually was renumbered H.R. 17463; its attempt provision still used the word "endeavor." H.R. 17463, 91st Cong., 2d Sess. § 504 (1970). The House considered H.R. 17463 along with H.R. 13742, which used the word "attempt." In commenting on the two bills, Administration witnesses used the words "endeavor" and "attempt" interchangeably.[12] No witness in the Ways and Means Committee Hearings recommended that the "endeavor" provision of H.R. 17463 be changed.[13] A new bill was then introduced to add to the bill passed by the Senate a new title addressing the need for preventing drug addiction. H.R. 18583, 91st Cong., 2d Sess., tit. I (1970). Although nothing in the reasons advanced in favor of that new bill suggested that any change was intended in the attempt provision, the new bill used the word "attempt" rather than "endeavor." H.R. 18583, *supra,* at § 506. House members were advised, however, that the new bill punished the same conduct as had section 504 of H.R. 17463:

ENDEAVOR AND CONSPIRACY—H.R. 17463 *and H.R. 18583* both provide that any person who endeavors or conspires to commit any offense under the Act may be punished by imprisonment and/or fine, which may not exceed the maximum punishment prescribed for committing the offense.[14]

There was no further comment concerning the attempt provisions. After an unrelated amendment caused the attempt provision of H.R. 18583 to be renumbered as section 406, the bill passed the House and Senate. Section 406 was codified at 21 U.S.C. § 846 (1976).

The purpose of the Comprehensive Drug Abuse Prevention and Control Act gives further indication of what Congress intended when it enacted section 846. In the gradual evolution of the prior federal drug

11. In *Osborn v. United States,* 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966), the petitioner had been convicted under 18 U.S.C. § 1503 (1976) of endeavoring to bribe a member of a jury panel in a prospective federal criminal trial. Petitioner argued that because the person contacted to bribe the juror was cooperating with the FBI, completion of the petitioner's endeavor was impossible. *Id.* at 332, 87 S.Ct. at 434. The Supreme Court rejected the argument:

Whatever continuing validity the doctrine of "impossibility," with all its subtleties, may continue to have in the law of criminal attempt, that body of law is inapplicable here. The statute under which the petitioner was convicted makes an offense of any proscribed "endeavor." And almost 50 years ago this Court pointed out the significance of that word: "The word of the section is 'endeavor,' and by using it the section got rid of the technicalities which might be urged as besetting the word 'attempt,' and it describes any effort or essay to accomplish the evil purpose that the section was enacted to prevent...." *United States v. Russell,* 255 U.S. 138, 143 [41 S.Ct. 260, 261, 65 L.Ed. 553] [1921].

*Id.* at 333, 87 S.Ct. at 434–35.

12. For example, the section-by-section analysis submitted by Mr. Ingersoll of the Justice Department gave this description of § 504:

This section provides that a person may be punished for *endeavoring* or conspiring to commit an offense under this Act. Upon conviction, his sentence may not exceed the punishment prescribed for the offense which was the object of the *attempt* or conspiracy. Ways and Means Committee Hearings at 223 (emphasis added).

13. *See* Staff of the Joint Committee on Internal Revenue Taxation, Summary of Recommendations on H.R. 17463, prepared for the use of the Committee on Ways and Means, House of Representatives (Comm. Print 1970).

14. Staff of the Committee on Ways and Means, House of Representatives, Comparison of Bills to Regulate Controlled Substances and to Amend the Narcotics and Drug Laws, app. at 24 (Comm. Print 1970) (emphasis added).

laws "Congress [had] manifested an attitude not of lenity but of severity toward violation of the narcotics laws." *Gore v. United States,* 357 U.S. 386, 391, 78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405 (1958). "[T]he history of narcotics legislation in this country 'reveals the determination of Congress to turn the screws of the criminal machinery—detection, prosecution and punishment—tighter and tighter.'" *Albernaz v. United States,* 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981) (quoting *Gore,* 357 U.S. at 390, 78 S.Ct. at 1283). Faced with a drug abuse problem that had grown to "epidemic proportions," H.R.Rep. No. 91–1444, 91st Cong., 2d Sess. 6, *reprinted in* [1970] U.S.Code Cong. & Ad.News 4566, 4569, Congress turned the screws tighter still by enacting the Comprehensive Drug Abuse Prevention and Control Act to strengthen the drug laws. *Albernaz,* 450 U.S. at 343, 101 S.Ct. at 1144; *United States v. Moore,* 423 U.S. 122, 139, 96 S.Ct. 335, 343, 46 L.Ed.2d 333 (1975); *United States v. Tighe,* 551 F.2d 18, 20 (3d Cir.), *cert. denied,* 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977). Congress embraced the philosophy that "the illegal traffic in drugs should be attacked with the full power of the Federal Government. The price for participation in this traffic should be prohibitive. It should be made too dangerous to be attractive." H.R.Rep. No. 91–1444, 91st Cong., 2d Sess. 9, *reprinted in* [1970] U.S.Code Cong. & Ad.News 4566, 4574–75. To squelch the drug traffic Congress drew the statute to cover "just about everything." 116 Cong.Rec. 33656 (1970) (remarks of Rep. Randall). As we found in

*United States v. Gomez,* 593 F.2d 210 (3d Cir.) (en banc), *cert. denied,* 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1052 (1979), a reading of the Act and its legislative history

makes it apparent that Congress, in legislating against drug use, intended to encompass every act and activity which could lead to proliferation of the drug traffic. Nothing in the statute indicates any congressional intent to limit the reach of this legislation, which is described in its title as "Comprehensive."

*Id.* at 212–13; *see United States v. Bommarito,* 524 F.2d 140, 144 (2d Cir.1975) (section 846 is "all-inclusive"). A spokesman for the bill emphasized that it provided "a comprehensive range of offenses which will render unlawful all drug-related activities which will defeat the purposes of this bill." 116 Cong.Rec. 33314 (1970) (remarks of Rep. Bush).[15]

In light of the legislative history and purpose of section 846, we conclude that Congress did not intend to adopt the old common law definition of attempt. The Senate clearly intended that the doctrine of impossibility, whose viability at common law was questionable at best, should not hamper federal efforts to enforce the drug laws. Members of the House were assured that the substitution of H.R. 18583 for the Senate bill worked no changes in the Senate's prohibition of any effort or essay to commit a drug-related offense. We cannot believe that when Congress created an attempt provision as part of an all-out effort to reach all acts and activities related to the drug traffic,[16] the House without comment

---

**15.** We find further evidence in other parts of the Act of the strength of Congress' desire to penalize all those who in any way try to engage in drug distribution. For example, 21 U.S.C. § 841(a)(1) (1976) makes it unlawful for a person to "distribute" a controlled substance. "Distribute" is defined to mean "deliver," 21 U.S.C. § 802(11) (1976), and "deliver" is defined as "the actual, constructive, or attempted transfer of a controlled substance." *Id.* at § 802(8); *see United States v. Tighe,* 551 F.2d 18, 20 (3d Cir.), *cert. denied,* 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977). Thus Congress prohibited attempts to distribute not only in § 846 but in § 841 as well. *United States v.*

*Tamargo,* 672 F.2d 887 (11th Cir.1982); *United States v. Oropeza,* 564 F.2d 316 (9th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978). For examples of Congress' efforts in § 846 to broaden the scope of inchoate liability, *see United States v. Dreyer,* 533 F.2d 112, 117 & n. 6 (3d Cir.1976) (dispensing with the overt act requirement in conspiracy); *Bommarito,* 524 F.2d at 144 (abrogation of the Wharton's Rule in conspiracy).

**16.** We note that if impossibility were a defense in the circumstances involved here, the harm loosed upon the public is not merely that would-be drug dealers must be freed to try again. Allowing the defense here would also

substituted the word "attempt" in order to give section 846 the narrowest possible meaning. *See United States v. Turley,* 352 U.S. 407, 413–17, 77 S.Ct. 397, 400–02, 1 L.Ed.2d 430 (1957).[17] Impossibility is therefore no defense to the charge of attempted distribution of a controlled substance under 21 U.S.C. § 846 (1976).[18]

*The Government's Proof*

█ The distribution of a noncontrolled substance believed to be a controlled substance thus constitutes an attempt to distribute a controlled substance under section 846. In this case the government established that Everett believed that the substance he distributed was P-2-P. It also proved that Everett distributed the substance knowingly and intentionally.

█ Of course, the crime of attempt is not established by proving *"mens rea simpliciter." Berrigan,* 482 F.2d at 189 n. 39. The offense of attempt "consists primarily in the intention with which the prepara-

tions were made." *United States v. Quincy,* 31 U.S. (6 Pet.) 445, 466, 8 L.Ed. 458 (1832); *see United States v. Bailey,* 444 U.S. 394, 405, 100 S.Ct. 624, 632, 62 L.Ed.2d 575 (1980). Intent, however, is not "the sole criterion to be considered in determining criminal responsibility," *Berrigan,* 482 F.2d at 188, because of the difficulties of proof.

> While *mens rea* is certainly within one's control it is not subject to direct proof; it is proved by circumstantial evidence only. More important, it is not subject to direct refutation. It is the subject of inference and speculation.

*Id.* at 189 n. 39. To prevent mistaken convictions the government must introduce some measure of objective evidence corroborating the attempted distribution of a controlled substance.

The Fifth Circuit has suggested the proper standard of proof to be required of the government in this case. That circuit shared our concern that the crime of at-

gut law enforcement efforts to infiltrate drug supply chains. The government goes undercover not only as purchaser, as in the instant case, but as seller, *e.g., United States v. Korn,* 557 F.2d 1089 (5th Cir.1977), or as middleman, *e.g., United States v. Heng Awkak Roman,* 356 F.Supp. 434 (S.D.N.Y.), *aff'd,* 484 F.2d 1271 (2d Cir.1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974). The DEA has apparently adopted the laudable policy of not supplying real drugs in such investigative efforts. *United States v. Pietri,* 683 F.2d 877, 879 (5th Cir.1982). If such impossibility is a defense, the government will be forced to furnish real drugs or abandon hope of obtaining attempt convictions. Given the horrendous difficulties confronted by law enforcement authorities in dealing effectively with the burgeoning drug traffic, it is difficult to assume that Congress intended to deprive them of "flexibility adequate to counter effectively such criminal activity." *Hampton v. United States,* 425 U.S. 484, 495 n. 7, 96 S.Ct. 1646, 1653 n. 7, 48 L.Ed.2d 113 (1976) (Powell, J., concurring).

**17.** As the Court of Military Appeals stated: It would be the height of folly on our part to conclude that [the congressional] committee, or the Congress, decided to include a specific article on attempts for the purpose of adopting a civilian doctrine which has been shown to be a source of utter frustration for the courts, text writers and law professors. *United States v. Thomas,* 13 U.S.C.M.A. 278, 287, 32 C.M.R. 278, 287 (1962). *See United States v. Bommarito,* 524 F.2d 140, 143–44 (2d

Cir.1975) (court presumes congressional intent in § 846 to dispense with Wharton's Rule because of Congress' obvious concern with the dangers posed by drug traffic).

**18.** In reaching that conclusion we are mindful of "the established rule of statutory construction that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.' " *Simpson v. United States,* 435 U.S. 6, 14, 98 S.Ct. 909, 913, 55 L.Ed.2d 70 (1978) (quoting *United States v. Bass,* 404 U.S. 336, 337, 92 S.Ct. 515, 517, 30 L.Ed.2d 488 (1971)); *United States v. Gomez,* 593 F.2d 210, 214 (3d Cir.) (en banc), *cert. denied,* 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1052 (1979); *see, e.g., Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980) (§ 846 held not to authorize special parole term for conspirators because that interpretation could "be based on no more than a guess as to what Congress intended"). The Supreme Court has repeatedly stated, however, that in applying the rule of lenity we are still required to give each word used by Congress its " 'fair meaning in accord with the manifest intent of the lawmakers.' " *United States v. Moore,* 423 U.S. 122, 145, 96 S.Ct. 335, 346, 46 L.Ed.2d 333 (1975) (quoting *United States v. Brown,* 333 U.S. 18, 25–26, 68 S.Ct. 376, 380, 92 L.Ed. 442 (1948)); *United States v. Tighe,* 551 F.2d 18, 20 (3d Cir.), *cert. denied,* 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977).

tempt not be used to "punish one's thoughts, desires, or motives, through indirect evidence, without reference to any objective fact." *United States v. Oviedo,* 525 F.2d 881, 884 (5th Cir.1976) (citing *Berrigan,* 482 F.2d at 189 n. 39); *see United States v. Brooklier,* 459 F.Supp. 476, 481 (C.D.Cal.1978). To avoid "baseless jury speculation where defendant's objective acts are equivocal," *United States v. Hough,* 561 F.2d 594, 596 (5th Cir.1977), the Fifth Circuit required that

> the objective acts performed [by the defendant], without any reliance on the accompanying *mens rea,* mark the defendant's conduct as criminal in nature. The acts should be unique rather than so commonplace that they are engaged in by persons not in violation of the law.

*Oviedo,* 525 F.2d at 885; *Hough,* 561 F.2d at 595; *United States v. Korn,* 557 F.2d 1089, 1091 (5th Cir.1977); *accord United States v. Innella,* 690 F.2d 834, 835 (11th Cir.1982); *United States v. Deangelis,* 430 F.Supp. 327, 331 (D.P.R.1976); *see People v. .Siu,* 126 Cal.App.2d 41, 271 P.2d 575, 576 (1954).

■ In the instant case the government has met that strict burden. It has proven objective acts performed by Everett which are sufficient to mark his conduct as criminal without reliance on *mens rea.* The government established not only that Everett promised to sell a controlled substance

and that he transferred the substance furtively, but also that immediately after arrest and proper *Miranda* warnings Everett confessed, identifying the substance he had distributed as P-2-P and revealing that he had gotten his P-2-P from Joseph Jackson who had obtained it from Frank. This statement unequivocally marked his conduct as an attempt to distribute P-2-P. As the prosecutor argued to the jury in this case,

> Think about that, ladies and gentlemen, and ask yourselves if you would say that to federal agents, or if you knew that it weren't P-2-P, at that point you wouldn't say so.

Trial Transcript of May 22, 1981, at 15.[19]

The government has established that Everett committed the crime of attempted distribution of a controlled substance in violation of 21 U.S.C. § 846 (1976). We will reverse the order of the district court granting Everett's motion for judgment of acquittal and will remand to the district court with the direction that the jury verdict of guilty on Count II of the indictment be reinstated, and for such other proceedings as are required.

---

19. The Fifth Circuit faced similar facts in *Hough.* After Hough's arrest for selling the supposed controlled substance, he had the indictment read to him. The indictment stated that Hough believed that the substance was in fact cocaine. Hough admitted the truth of the indictment and pled guilty; after *Oviedo* was decided he appealed his conviction. The Fifth Circuit found the conviction met the test set under *Oviedo,* saying:

> The *Oviedo* court's concern was that the jury had found criminal intent based solely on acts consistent with a noncriminal enterprise. 525 F.2d at 886. Had another objective fact been present, such as the confession of the defendant to a police officer after proper *Miranda* warnings, the *Oviedo* verdict would undoubtedly withstood appellate scrutiny. Certainly an in-court admission is as corroborative of criminal intent as an out-of-court confession, the taking of money, or the defendant's unsworn personal statements

that he would purchase a narcotic with that money. See 525 F.2d at 886.

561 F.2d at 595–96 (citation omitted). A district court in the First Circuit has held that a defendant's statement on arrest admitting trying to smuggle cocaine when in fact his substance was noncontrolled was an objective fact justifying conviction for attempted smuggling under the *Oviedo* standard. *Deangelis,* 430 F.Supp. at 328, 331–322; *see United States v. Korn,* 557 F.2d 1089 (5th Cir.1977) (payment of money is sufficient objective fact); Enker, *Impossibility in Criminal Attempts—Legality and the Legal Process,* 53 Minn.L.Rev. 665, 692 (1969) (sale of look-alike drug is sufficient objective fact to convict for attempted distribution); *cf. United States v. Murray,* 527 F.2d 401, 409 (5th Cir.1976) (finding evidence of conspiracy to distribute "controlled" substance insufficient under *Oviedo* when conspirator told undercover buyer that conspirator's supplier had "burned" them).