

Opinions of the United
States Court of Appeals
for the Third Circuit

8-11-1997

# United States v. Cooper

Precedential or Non-Precedential:

Docket 96-1763

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Cooper" (1997). *1997 Decisions*. Paper 187.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/187

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

iled August 11, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1763

UNITED STATES OF AMERICA,

v.

JIMMY LEE COOPER, a/k/a JIMMIE LEE COOPER,
a/k/a JIM DAVID

Jimmy Lee Cooper,

Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. Criminal No. 95-cr-00558)

ARGUED MAY 8, 1997

BEFORE: STAPLETON and LEWIS, Circuit Judges
and WALLS,* District Judge.

(Filed August 11, 1997)

_____

* Honorable William H. Walls, United States District Judge for the
District of New Jersey, sitting by designation.

William A. DeStefano (ARGUED)
DeStefano & Warren, P.C.
437 Chestnut Street
Lafayette Building, Suite 1006
Philadelphia, PA 19106

 Attorney for Appellant

Zane D. Memeger (ARGUED)
Office of United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

 Attorney for Appellee

**OPINION OF THE COURT**

LEWIS, Circuit Judge.

Jimmy Lee Cooper was convicted of tampering with a government informant. Because we find that there was insufficient evidence to support his conviction, we will reverse.

**I.**

On October 3, 1995, Cooper was indicted on two counts of tampering with a government informant, in violation of 18 U.S.C. § 1512(b)(3), in the United States District Court for the Eastern District of Pennsylvania. The charges stemmed from events that occurred during the course of a joint drug investigation by the Bristol Township Police Department (BTPD) and the Drug Enforcement Administration (DEA).

On April 13, 1995, Kinny Hicks, the informant, arranged to meet Cooper to purchase crack cocaine. Prior to the meeting, DEA agents searched Hicks, gave him $700 and equipped him with a body recorder and electronic transmitter. At the meeting, Cooper sold Hicks a white substance for $700. After the meeting, Hicks turned the substance over to the DEA. The DEA then conducted a

preliminary field test which showed that the substance "reacted positive to the presence of a caine derivative . . . meaning lidocaine, procaine, or cocaine." S.A. at 9a-10a. On May 31, 1995, the substance was sent to a DEA lab for a full drug analysis.

On June 23, 1995, Hicks again contacted Cooper in order to arrange a purchase of one and one-half ounces of crack. Prior to this meeting, Hicks met again with DEA agents, who searched him, gave him $1,400 and equipped him with a body recorder and electronic transmitter. Hicks then went to meet Cooper. At around 6:00 p.m., Cooper and two of his friends arrived by car. Hicks entered the car and Cooper tried to give him a bag containing white powder. Hicks did not accept it, stating that he wanted crack and not cocaine powder.

After failing to convince Hicks to take the powder, Cooper told him that his friends would get the powder "cooked up." A. at 22. Hicks then left the car and waited. Around 6:30 p.m., Cooper spoke again with Hicks about the delay. At that time, Cooper spotted an unmarked police car containing a DEA agent. He charged the car and began "sticking his tongue out and pointing at himself, saying, uh huh, this is me right here." A. at 24. He then accused Hicks of trying to set him up and ordered one of his friends to get his gun because he was going to kill Hicks. Hicks subsequently left the scene and was picked up by DEA agents.

Later that evening, Cooper called the BTPD and told a BTPD detective that he knew Hicks "was a cop . . . or police and that he was going to fuck up Kinny Hicks." S.A. at 51-52. He also called Hicks' home and told Kinny Hicks' brother that Kinny had set him up. Later in June, he told Jermaine Perry, a mutual acquaintance, that Hicks had set him up and that "when I see him I'm going to fuck him up." S.A. at 61. On August 2, 1995, Cooper spotted Hicks at a store and told him that he "had better watch[his] back." A. at 33.

The substance that Cooper attempted to sell to Hicks on June 23 was never recovered. In July 1995, the DEA learned that the substance that Hicks bought from Cooper

3

on April 3, 1995, was procaine, which is not a controlled substance.

At trial, the government presented testimony from Hicks and other witnesses concerning these threats. At the conclusion of the trial, the district court instructed the jury that the government had the burden of proving that Cooper "knowingly used intimidation and threats against a government informant with the intent to hinder, delay or prevent the communication to a law enforcement officer, here the drug enforcement agents, of information relating to the commission or possible commission of a federal offense, in this instance trafficking in drugs." A. at 90. The court also instructed the jury that "[s]elling drugs, such as cocaine powder or crack, is a federal offense. So is selling what is called a counterfeit substance as though it were the genuine controlled substance, such as cocaine." A. at 91. There were no objections to these instructions. On March 20, 1996, the jury returned a verdict of guilty on both counts. On August 22, 1996, Cooper was sentenced to 42 months on each count, to be served concurrently.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

Cooper makes three arguments on appeal: (1) there was insufficient evidence to support his conviction for tampering with a witness; (2) the jury instructions were flawed; and (3) he received ineffective assistance of counsel because his attorney failed to object to plainly erroneous jury instructions. Cooper argues that, as a result, his conviction must be reversed and that a retrial is barred by the Double Jeopardy Clause of the Fifth Amendment.1

─────────────────────────────────────────────

1. The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy." U.S. Const. amend. V. Thus, "when a defendant's conviction is reversed by an appellate court on the sole ground that the evidence was insufficient to sustain the jury's verdict, the Double Jeopardy Clause bars a retrial on the same charge." Lockhart v. Nelson, 488 U.S. 33, 39 (1988); Taberer v. Armstrong World Indus., Inc., 954 F.2d 888, 908 (3d Cir. 1992).

4

The government concedes that the jury instructions were flawed but argues that the case should be remanded for a new trial because there is sufficient evidence to convict Cooper. As a result of this concession, we need only address Cooper's first claim.2

"A claim of insufficiency of evidence places a very heavy burden on the appellant." United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995). In such cases, we must "view the evidence in the light most favorable to the government." Id. Moreover, we "must affirm the conviction[ ] if a rational trier of fact could have found [the] defendant guilty beyond a reasonable doubt, and the verdict is supported by substantial evidence." Id. If there is substantial evidence to support the jury's determination, we will "not disturb the verdict although on that evidence we might not have made the same decision." United States v. Hannigan , 27 F.3d 890, 892 (3d Cir. 1994).

18 U.S.C. § 1512, "Tampering with a witness, victim, or an informant" (the "Witness Tampering Statute"), provides, in relevant part:

_____

2. The district court instructed the jury, without objection from trial counsel, that the third essential element of witness tampering in this case was that Cooper was involved in "trafficking in drugs." A. at 91. The court then instructed the jury, again without objection, that "selling drugs, such as cocaine powder or crack, is a federal offense. So is selling what is called a counterfeit substance as though it were the genuine substance, such as cocaine." Id.

There was insufficient evidence presented at trial from which the jury could properly conclude that Cooper threatened the government informant in relation to "trafficking in drugs," or specifically, the sale of a counterfeit substance, in violation of 21 U.S.C.§ 841(a)(2). And because the district court misapplied the term "counterfeit substance," see infra IIB, there is a strong possibility that the jury may have improperly convicted Cooper of witness tampering if it had understood the jury instructions to mean that one could be guilty of drug trafficking if one sold procaine as if it were cocaine. The government concedes this point. This concession moots the ineffective assistance of counsel claim.

5

Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to . . .

hinder, delay, or prevent the communication to a law enforcement officer or a judge of the United States of information relating to the commission or possible commission of a <u>Federal</u> offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 1512(b)(3) (emphasis added.)

In <u>United States v. Stansfield</u>, 101 F.3d 909 (3d Cir. 1996), we considered a substantially similar provision of the Witness Tampering Statute, section 1512(a)(1)(C). The essential elements of an offense under that section are:

(1) the defendant killed or attempted to kill a person;

(2) the defendant was motivated by a desire to prevent the communication between the informant and law enforcement authorities concerning the commission or possible commission of an offense;

(3) the offense was actually a federal offense;

(4) the defendant believed that the informant might communicate with the federal authorities.

<u>See id.</u> at 918. <u>Stansfield</u>'s analysis applies as well to section 1512(b)(3), in cases in which a defendant threatens another person.

**B.**

Cooper argues that the government failed to prove the third <u>Stansfield</u> element, "the offense was actually a federal offense."3 The government concedes that there was no

_____

3. Cooper also argues that <u>Stansfield</u> requires that the government prove that a defendant charged under the Witness Tampering Statute believe

6

evidence presented at trial from which the jury could properly conclude that Cooper threatened Hicks in relation to the actual sale of a controlled substance or counterfeit substance. However, the government argues that there was sufficient evidence to prove another underlying crime: <u>attempted</u> sale of a controlled substance, a violation of 21 U.S.C. § 846.

We agree that the evidence does not support a finding that there was an actual underlying sale of a controlled or counterfeit substance. 21 U.S.C. § 841(a) provides in relevant part, that

it shall be unlawful for any person knowingly or intentionally --

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possession with intent to distribute or dispense, a counterfeit substance.

21 U.S.C. § 841(a) (1981). Because it is undisputed that procaine is not a "controlled substance" under federal law, <u>see</u> 21 U.S.C. § 812 (1981) (listing controlled substances), there is no evidence here of an actual sale of drugs in violation of 21 U.S.C. § 841(a)(1)(1981).

Moreover, 21 U.S.C. § 802(7) provides that

_____

that the person threatened would communicate with federal law enforcement agents. Here, Cooper testified that he believed that he was under surveillance by BTPD. Moreover, a BTPD Detective testified that he told Cooper on June 23 that he was the subject of a local law enforcement investigation. Cooper argues that there is no basis in fact to infer that he believed that Hicks worked for and would communicate with federal law enforcement agents. Such a belief is unnecessary for Cooper to have violated the Witness Tampering Statute. See <u>United States of America v. Bell</u>, 1997 WL 269404, *5 (3rd Cir. May 22, 1997) ("What our analysis renders irrelevant is the defendant's `mental state' regarding the fact that the officer is a federal officer" for the purposes of the Witness Tampering Statute).

7

[t]he term `counterfeit substance' means a <u>controlled substance</u> which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person or persons who in fact manufactured, distributed, or dispensed such substance and which thereby falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser.

21 U.S.C. § 802(7)(1981) (emphasis added.) By definition, a "counterfeit substance" is a "controlled substance." If a particular substance is not a "controlled substance," then it cannot be a "counterfeit substance" within the meaning of Section 802(7). Because procaine is not a controlled substance, it cannot be a counterfeit substance. Thus, the sale of procaine cannot amount to a sale of a counterfeit substance, in violation of 21 U.S.C. § 841(a)(2) (1981).

Despite this, the government argues that the evidence presented at trial could support a jury's finding that Cooper threatened the government informant in relation to an attempt to distribute cocaine, in violation of 21 U.S.C. § 846. That section provides:

Any person who attempts or conspires to commit any offense defined in this subchapter [including 21 U.S.C. § 841(a)(1), which makes it unlawful to distribute or possess with intent to distribute cocaine] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

21 U.S.C. § 846 (1997).

In <u>United States v. Everett</u>, 700 F.2d 900 (3d Cir. 1983), we held that in order for a defendant to be found guilty of attempt under section 846, the government must "introduce some measure of objective evidence corroborating the attempted distribution of a controlled substance." <u>Everett</u>, 700 F.2d at 908. In that case, Everett was convicted of attempting to distribute P-2-P (a controlled substance) even though the substance he actually had was

8

a non-controlled substance. We found sufficient evidence to support the jury's finding because

[t]he government established not only that Everett promised to sell a controlled substance and that he transferred the substance furtively, but also that immediately after arrest and proper Miranda warnings Everett confessed, identifying the substance he had distributed as P-2-P and revealing that he had gotten his P-2-P from Joseph Jackson who had obtained it from Frank. This statement unequivocally marked his conduct as an attempt to distribute P-2-P.

Id. at 909. We concluded that "the objective acts performed, without any reliance on the accompanying mens rea, mark the defendant's conduct as criminal in nature." Id. (quoting United States v. Oviedo, 525 F.2d 881, 885 (5th Cir. 1976)). Thus, a defendant can be guilty of an attempt to sell drugs even if the purported drugs turn out to be a non-controlled substance. In other words, impossibility is not a defense to the charge of attempted distribution of a controlled substance. Id. at 908.

We also emphasized, however, that we require a strong evidentiary basis to support a finding of attempt in the absence of the drug itself. Id. at 909 ("The acts should be unique rather than so commonplace that they are engaged in by persons not in violation of the law.") (quoting United States v. Oviedo, 525 F.2d 881, 885 (5th Cir. 1976)).

The Fifth Circuit has taken substantially the same approach in Oviedo, finding that "the objective conduct of the defendant must strongly corroborate the firmness of the defendant's criminal intent." Oviedo, 525 F.2d at 886. There, the court found that the evidence was insufficient where there were only

two objective facts. First, Oviedo told the agent that the substance he was selling was heroin, and second, portions of the substance were concealed in a television set. If another objective fact were present, if the substance were heroin, we would have a strong objective basis for the determination of criminal intent and conduct consistent with and supportive of that intent . . . . But when this objective basis for the

9

determination of intent is removed, when the
substance is not heroin, the conduct becomes
ambivalent . . . . We cannot conclude that the objective
acts of Oviedo apart from any indirect evidence of
intent mark his conduct as criminal in nature. Rather,
those acts are consistent with a non-criminal
enterprise.

Id. at 882.

In United States v. Hough, 561 F.2d 594, 595 (5th Cir.
1977), the Fifth Circuit again emphasized that objective
facts proven at trial must be "unequivocally corroborative of
criminal intent" before it could find sufficient evidence of
attempt to distribute a controlled substance. While
affirming Hough's conviction in the absence of a genuine
controlled substance, the court noted that

if the only fact on this record were Hough's negotiation
for the sale of a non-narcotic substance, Oviedo would
compel the court to grant the defendant's motion to
vacate his guilty plea. There is also present, however,
an objective fact which is unequivocally corroborative
of criminal intent: Hough's statement, under oath and
before a court of law, that he did in fact do those
things that the Assistant United States Attorney recited
(i.e., negotiated for sale a substance he admittedly
thought to be cocaine).

Id.

The government argues that there was sufficient objective
evidence to show that on June 23rd, Cooper attempted to
sell Hicks cocaine even though the powder was not
recovered. It relies on the following evidence: Cooper
contacted Hicks by telephone and negotiated a sale of one
and one-half ounces of crack cocaine for $1,400; he met
Hicks and attempted to give him a bag containing a white
powdery substance which he stated was cocaine; and he
agreed to get the substance "cooked up" into crack. This
evidence, the government argues, proves that Cooper
believed that he was selling genuine cocaine.

Cooper responds that the most compelling inference
regarding the events of June 23rd is that he was attempting

10

to defraud Hicks by selling him procaine and telling him that it was cocaine, just as he had done on April 13th. He relies on the following evidence to support this position. On June 23, Hicks handed the substance back to Cooper "and told him that is not what I wanted." A. at 22. Hicks also testified that Cooper was trying to "pass" that substance "off to me as crack," that he told Cooper that it was not crack and that he "knew that it didn't have to be cooked up." Id. Moreover, Cooper notes that his statements on June 23rd were virtually identical to those he made on April 13th, when he had sold procaine as if it were cocaine. Finally, he argues that his antagonistic behavior toward law enforcement agents -- sticking out his tongue at an undercover agent and later calling the Bristol Township Police Department -- were inconsistent with actions of one who believed that he was involved in a genuine drug deal.

Although the government is entitled to have the evidence viewed in the best possible light, Cooper's arguments are compelling. A substantial possibility exists that Cooper was perpetrating a fraud on Hicks, like the one that he had committed on April 13th. Moreover, unlike in Everett and Hough, there is no post-arrest admission by the defendant which would provide strong objective evidence of an attempt to commit a narcotics offense. Nor has the government recovered a genuine controlled substance, which would also provide strong objective evidence. See Oviedo, 525 F.2d at 882. In our view, the government has not provided sufficient evidence to convict Cooper of a violation of the Witness Tampering Statute where the underlying offense is attempt to sell cocaine in violation of 21 U.S.C. § 846.4

_____

4. After oral argument, the government also argued that

clearly the protections afforded to a government informant (who is assisting DEA in a lawful drug investigation which is based on representations by the defendant that he is dealing cocaine) under the witness tampering statute should not be predicated on whether the drugs sold by the defendant were in fact a controlled substance or believed by the appellant to be a controlled substance.

Appellee's Second Supplemental Brief at 1. To hold otherwise, the government argues, would undermine the purpose of the statute, which is to ensure that people come forward to testify at criminal trials.

11

For the foregoing reasons, we conclude that there was insufficient evidence to support Cooper's conviction for tampering with a government informant. We further conclude that a retrial is barred by the Double Jeopardy Clause. See Lockhart, 488, U.S. at 39; Taberer, 954 F.2d at 908 ("[T]he double jeopardy clause prohibits retrial when the government has failed to present minimally sufficient evidence at the first trial.").

**III.**

Because there was insufficient evidence to support the jury's guilty verdict, we will reverse Cooper's conviction and direct the entry of a judgment of acquittal.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit
_____

As we noted above, this position is inconsistent with the plain language of the statute. The statute requires that the offense was actually a federal offense. 18 U.S.C. § 1512(b)(3); Stansfield, 101 F.3d at 918. Moreover, as Cooper notes, Pennsylvania has an analogous witness tampering statute that protects persons not within the reach of the federal statute. See 18 Pa. C.S.A. § 4952(a) (Purdon's 1983) (punishing persons who threaten or intimidate a witness or victim with the intent to "impede, impair, prevent or interfere with the administration of criminal justice . . . .").

12