NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-3254
_____

UNITED STATES OF AMERICA

v.

CARLOS CEGLEDI,
Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court  No. 1-08-cr-00218-001
District Judge: The Honorable Sylvia H. Rambo

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 14, 2011

Before: RENDELL, SMITH, and ROTH, *Circuit Judges*

(Filed: August 9, 2011)

_____

OPINION
_____

SMITH, *Circuit Judge.*

Carlos Cegledi was convicted, along with two of his three co-defendants, of (i) attempt and conspiracy to distribute or to possess with intent to distribute more than 500 grams of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and (ii)

interstate travel in facilitation of attempted drug trafficking, in violation of 18 U.S.C. § 1952(a)(3). The gist of the criminal conduct was a plot to transport 23 pounds of methamphetamine from Georgia to Pennsylvania for sale to one Antonio Pagan, who turned out to be a government informant. Although the substance delivered to the informant initially field-tested positive for methamphetamine, later lab tests revealed that it in fact contained no narcotics. Cegledi appeals his conviction and sentence. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231; ours is premised on 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

Cegledi raises five meritless arguments. The first is that there was insufficient evidence at trial to support the jury's finding that he agreed and intended to distribute methamphetamine. A jury's verdict of guilt must be sustained on appeal "if, viewing the evidence in the light most favorable to the Government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Rawlins*, 606 F.3d 73, 80 (3d Cir. 2010) (citation and internal quotation marks omitted). "We apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). "[A] defendant can be guilty of an attempt to sell drugs even if the purported drugs turn out to be a non-controlled substance," so long as there is a "strong evidentiary basis" to show that the defendant believed the drugs to be real and intended to distribute them as such. *United States v. Cooper*, 121 F.3d 130, 135 (3d Cir. 1997); *United States v. Everett*, 700 F.2d 900, 908 (3d Cir. 1983). Cegledi's theory of the case was that he and the other defendants always knew that the apparent drugs were fake, and

2

that they intended to scam Pagan by selling him the counterfeit substance.

There was, however, ample evidence presented at trial from which the jury could rationally have concluded that Cegledi and his co-defendants believed that the substance being transported and distributed was real methamphetamine. First of all, although the material turned out not to contain drugs, it was a good counterfeit: it looked like genuine methamphetamine, was packaged like it, and field-tested positive for the drug. App. 452–53, 528–30. Pagan testified that he had had a long-term profitable relationship with the defendants, which had in the past resulted in multiple transactions involving real, good-quality narcotics, and that he believed that the drugs he was procuring as part of the investigation were real. *Id.* at 420–22, 433. Pagan also testified to his belief that the defendants intended to have future dealings with him, which the defendants would have jeopardized if they had intentionally delivered counterfeit drugs. *Id.* at 433–34. When a past shipment of drugs from the defendants to Pagan turned out to be of low quality, the defendants supplied new, high-quality drugs to be mixed into the bad batch to improve its quality—an act the jury could have interpreted as an effort to maintain the parties' working relationship. *Id.* at 199–200. Moreover, as the transaction was planned, the defendants were not to receive payment for the drugs that they delivered until several days after the drugs had been delivered. *Id.* at 424–25. The jury was free to suppose that someone who knew that the drugs were false would have demanded payment up front, in order to avoid the possibility that the purchaser would discover the drugs' low quality and then refuse to pay—and thus to infer that the defendants believed that they had provided Pagan real methamphetamine. Taken together, this evidence was sufficient to permit a

rational trier of fact to disregard Cegledi's theory of the case, and to conclude that he and his co-defendants intended to distribute a controlled substance. The evidence was sufficient and the verdict will stand.

Cegledi next objects to the District Court's use of the sentencing guidelines' methamphetamine-mass provisions in determining his base offense level, on the basis that the substance involved in this case did not in fact contain any controlled substance. His argument is ill-founded. Cegledi and his co-defendants were convicted of attempt and conspiracy, and the comments to the sentencing guidelines provide that the relevant amount for sentencing a criminal convicted of an inchoate offense is not the quantity of drugs actually delivered (since no actual delivery is required for conviction), but rather the agreed-upon amount. *See* U.S.S.G. § 2D1.1 cmt. n.12; *United States v. Burke*, 431 F.3d 883, 887 (5th Cir. 2005). The jury's conviction entails findings that Cegledi intended to complete the full 23-pound deal, that he believed that the substance being delivered was in fact methamphetamine, and that he was part of a conspiracy (i.e., a criminal agreement) to complete the crime. The District Court did not err in its application of the guidelines.

Cegledi's third objection is to the District Court's determination, for sentencing purposes, that he was an organizer or leader of a criminal organization. We review the District Court's factual finding regarding the defendant's role in the offense for clear error. *See United States v. Hart*, 273 F.3d 363, 378 (3d Cir. 2001). Under this standard, reversal is appropriate "only if [the factual finding] is completely devoid of a credible evidentiary basis or bears no rational relationship to the supporting data." *Shire U.S., Inc.*

4

*v. Barr Labs., Inc.*, 329 F.3d 348, 352 (3d Cir. 2003) (quoting *Am. Home Prods. Corp. v. Barr Labs., Inc.*, 834 F.2d 368, 370–71 (3d Cir. 1987)). The government's evidence here is not overwhelming, but it is sufficient to insulate the District Court's decision from reversal. Pagan's account of a preliminary meeting in Georgia casts Cegledi as the leader of the organization: he arrived at the meeting last, was the only participant to bring with him a bodyguard (a "pistolero" in the vernacular), gave the order for an apparent subordinate to retrieve a sample of the apparent methamphetamine for Pagan to inspect, and made the initial offer to provide Pagan with 70 pounds of the drug. *See* App. 209–12. Pagan was later informed by Ramon Ferrer, one of Cegledi's co-defendants, that the eventual 23-pound deal had been reduced to only 6 pounds. After "curs[ing] the shit out of" Ferrer to no avail, Pagan spoke to Cegledi—first on the phone and then in person. Cegledi was apparently the only person who could give the go-ahead to complete the full sale as originally planned, and he agreed to secure the additional 17 pounds. *See id.* at 226–28. Taken together, this evidence provided a sufficient basis for the District Court's finding that he was an organizer or leader of the drug conspiracy. The court did not commit clear error.

Cegledi next argues that he should have received a downward adjustment under U.S.S.G. § 5C1.2. However, application of that section depends on, inter alia, the defendant not being "an organizer, leader, manager, or supervisor of others in the offense," and, as just explained, the District Court did not clearly err in determining that Cegledi was an organizer or leader of the criminal enterprise. He is therefore ineligible for relief under § 5C1.2.

5

Finally, Cegledi claims that the District Court should have awarded him a downward variance in sentencing. The substantive reasonableness of a criminal sentence is reviewed for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). We agree with the government's contention that the court engaged in no such abuse. In arriving at Cegledi's 234-month aggregate sentence, the court reduced the total sentence by 20% to account for the fact that the methamphetamine was counterfeit—though for reasons suggested above, Judge Rambo would have been well within her authority had she counted the entire agreed-upon amount. The court was not required to further reduce Cegledi's attempted-drug-trafficking sentence to account for the fact that he was not armed; indeed, as the government points out, the court was perhaps generous in declining to *enhance* Cegledi's sentence on the ground that his co-defendant Francisco Barrios was in possession of a gun when the fake drugs were delivered. And although Cegledi had zero criminal history points and a very limited criminal record, that alone did not require a variance in sentencing—particularly in light of his role as the leader of a large-scale drug distribution organization. Cegledi's sentence is not unreasonable, and the District Court did not abuse its discretion.

We will affirm the District Court's judgment.