**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Johnny E. REEVES,
Defendant-Appellant.**

No. 85–5579.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 7, 1986.

Decided June 24, 1986.

Dale M. Quillen, Nashville, Tenn., Lucinda Smith (argued), for defendant-appellant.

Joe B. Brown, U.S. Atty., Nashville, Tenn., Ross Alderman (argued), for plaintiff-appellee.

Before MARTIN and KRUPANSKY, Circuit Judges, and CHURCHILL, District Judge.*

KRUPANSKY, Circuit Judge.

Defendant/appellant Johnny E. Reeves appealed the jury's verdict of guilty for violating 21 U.S.C. § 846[1] —knowingly attempting to unlawfully distribute or unlawfully possess with intent to distribute a quantity of a controlled substance.

Reeves was a deputy sheriff with the Wayne County Tennessee Sheriff's Department. On December 6, 1984, Reeves was contacted by Phillip Thune, an agent for the Drug Enforcement Agency who was posing as an importer of cocaine. Thune contacted Reeves after Thune had been advised by an individual named Don Moyer that Reeves was seeking to enter the illegal drug business and use his official position to further illegal drug activities in return for easy money. A meeting with Reeves was scheduled at a Waynesboro, Tennessee restaurant. Upon inquiry at the meeting, Reeves informed Thune that he knew of remote areas in Waynesboro where drugs could be safely air dropped from aircraft.

Thune and Reeves met again on December 27, 1984 at an abandoned store in Collinwood. From Collinwood, the two men drove in Reeves' marked Wayne County Sheriff's patrol car to a location about five miles from Collinwood to examine an area previously described by Reeves as a suitable drop zone for drugs.

On January 7, 1985, at a prearranged time Reeves spotted the drop zone for Thune and his pilot during a fly-over so as to permit the pilot to mark the site on his aeronautical chart to facilitate future drug drops.

Reeves was also to provide security and protection before, during and after the drugs were dropped and retrieved, and to ensure passage of the drugs from the vulnerable drop site to a safer location. Reeves was to receive $500.00 per drug drop.

When Reeves and Thune again spoke on January 8, 1985, Reeves advised Thune of his intention to obtain an untraceable weapon which he intended to use to eliminate any interference with the drug drops.

On January 15, 1985, Thune returned to Wayne County accompanied by Special Agent Goodowens of the Drug Enforcement Agency, who was also masquerading as a drug importer. After meeting Reeves in Collinwood, the two undercover agents followed him back to the drop zone. As Reeves and Thune had directed, an aircraft dropped a cannister which Thune retrieved. On the return trip to Collinwood in Reeves' patrol car, Thune told Reeves that the cannister contained cocaine, although in reality it contained a non-controlled substance prepared by the Drug Enforcement Agency. Thune paid Reeves five hundred dollars

---

* Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. 21 U.S.C. § 846 provides:
   Any person who attempts or conspires to commit any offense defined in this sub-chapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

and agreed to a future drop. Reeves provided Thune with safe passage from the area.

On January 23, 1985, Thune and Goodowens again met Reeves in Collinwood for a second airdrop. As they approached the drop area, they observed an automobile with California license plates parked at the site. Reeves escorted it, in his patrol car, to the highway to ensure against interference with the drug drop. Thune and Goodowens remained at the drop site. After Reeves returned to the drop site, the aircraft was signaled to make the drug drop. A cannister purportedly containing cocaine was dropped and retrieved. During the return trip to Collinwood, Reeves advised Thune that he would attempt to sell a quantity of the cocaine to an individual identified as Roberson. Thune paid Reeves $1,000 for the second airdrop. The serial numbers of the currency used to pay Reeves had been previously recorded by Thune and was ultimately recovered from Reeves after his arrest later that day.

After initially denying any implication in the incidents, Reeves admitted that he had in fact directed Thune to a remote field where a container containing cocaine was air dropped and retrieved by Thune. Reeves also stated that his presence at the site was prompted by his agreement to provide protection for the cocaine and Thune. Reeves moreover affirmed all other aspects of his participation in the January 15, 1985 operation. Finally, Reeves admitted that he had solicited participation in the drug trade through another individual in the community and was thereafter contacted by Thune.

On February 20, 1985, Reeves was indicted on two counts of violating Section 406 of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 846—knowingly attempting to unlawfully distribute or unlawfully possess with intent to distribute a quantity of cocaine. The case was tried before a jury and Reeves was found guilty on each count. There followed this timely appeal.

Reeves argued on appeal that the government failed to prove beyond a reasonable doubt that he participated in any overt acts integral to the commission of the charged substantive offense. Specifically, Reeves charged that the evidence was insufficient to prove that he possessed or attempted to possess the substance he believed to be cocaine.[2]

It should initially be noted that the requisite conduct necessary to support a conviction for attempt is not always capable of easy analysis. As the Eighth Circuit has observed, "whether conduct represents a 'substantial step' toward commission of the criminal design is, in Justice Holmes' words, 'a question of degree,' depending on the factual circumstances peculiar to each case." *United States v. Joyce*, 693 F.2d 838, 841 (8th Cir.1982) (quoting *Commonwealth v. Peaslee*, 177 Mass. 267, 272, 59 N.E. 55, 56 (1901)). It is, however, abundantly clear that Congress, in its promulgation of the attempt statute, intended that the term "attempt" should be construed in a broad and all inclusive manner. As the court stated in *United States v. Gomez*, 593 F.2d 210, 212–13 (3d Cir.1979) (en banc) *cert. denied*, 441 U.S. 948, 99 S.Ct. 2172, 60 L.Ed.2d 1052 (1979):

**2.** Existing precedent demonstrates that the substitution and use of sham cocaine in place of actual cocaine does not relieve a defendant from culpability so long as the defendant subjectively believed, as in the case at bar, that the substance in question was actual cocaine. *United States v. Pennell*, 737 F.2d 521 (6th Cir.1984). The distribution of a non-controlled substance, believed to be a controlled substance, constitutes an attempt to distribute a controlled substance under 21 U.S.C. § 846. *United States v. Everett*, 700 F.2d 900 (2d Cir.1983). The offense

of attempt consists primarily in the intention with which preparations were made. Intent, however, is not the sole criteria to be considered in determining criminal responsibility because of the difficulties of proof. "While *mens rea* is certainly within one's control it is not subject to direct proof; it is proved by circumstantial evidence only. More important, it is not subject to direct refutation. It is the subject of inference and speculation." *Everett*, 700 F.2d at 908 (quoting *United States v. Berrigan*, 482 F.2d 171, 189 n. 39 (3d Cir.1973)).

A reading of the Drug Abuse Act makes it apparent that Congress, in legislating against drug abuse, intended to encompass every act and activity which could lead to a proliferation of drug traffic. Nothing in the statute indicates any congressional intent to limit the reach of this legislation, which is described in its very title as "Comprehensive."

The Third Circuit later observed:

Congress [had] manifested an attitude not of lenity but of severity toward violation of the narcotics law. *Gore v. United States*, 357 U.S. 386, 391, 78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405 (1958) ... Faced with a drug abuse problem that had grown to "epidemic proportions," H.R.Rep. No. 91–1444, 91st Cong., 2d Sess. 6, reprinted in [1970] U.S. Code Cong. & Ad. News 4566, 4569, Congress turned the screws tighter still by enacting the Comprehensive Drug Abuse Prevention and Control Act to strengthen the drug laws. *Albernaz*, 450 U.S. [333] at 343, 101 S.Ct. [1137] at 1144 [67 L.Ed.2d 275 (1981)]; *United States v. Moore*, 423 U.S. 122, 139, 96 S.Ct. 335, 343, 46 L.Ed.2d 333 (1975); *United States v. Tighe*, 551 F.2d 18, 20 (3d Cir.) *cert. denied*, 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977). Congress embraced the philosophy that "the illegal traffic in drugs should be attacked with the full power of the Federal Government. The price for participation in this traffic should be prohibitive. It should be made too dangerous to be attractive." H.R. Rep. No. 91–1444, 91st Cong., 2d Sess. 9, reprinted in [1970] U.S. Code Cong. & Ad. News 4566, 4574–75. To squelch the drug traffic Congress drew the statute to cover "just about everything." 116 Cong.Rec. 33656 (1970) (remarks of Rep. Randall).

\* \* \* \* \* \*

A spokesman for the bill emphasized that it provided "a comprehensive range of offenses which will render unlawful all drug-related activities which will defeat the purpose of this bill." 116 Cong.Rec. 33314 (1970) (remarks of Rep. Bush).

*United States v. Everett*, 700 F.2d 900, 907–08 (3d Cir.1983) (footnotes omitted).

Thus there can be no question that the Congressional intent in fashioning the attempt provision as part of an all-out effort to reach all acts and activities related to the drug traffic was all inclusive and calculated to eliminate technical obstacles confronting law enforcement officials in their pursuit to interdict the proliferating drug traffic.

In *United States v. Oviedo*, 525 F.2d 881 (5th Cir.1976), the Fifth Circuit suggested the proper standard of proof to be required of the government to establish an attempt in order to avoid punishing " .... one's thoughts, desires or motives, through indirect evidence, without reference to any objective fact." 525 F.2d at 885. The court posited that "the objective acts performed [by the defendant], without any reliance on the accompanying *mens rea*, mark the defendant's conduct as criminal in nature. The acts should be unique rather than so commonplace that they are engaged in by persons not in violation of the law." *Oviedo*, 525 F.2d at 885. This standard of proof has been adopted in this circuit. *United States v. Pennell*, 737 F.2d 521, 525 (6th Cir.1984) *cert. denied*, — U.S. —, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985).

Applying the enunciated standard to the instant case, it is apparent that the government carried this burden. In order to prove attempt, the government had to introduce evidence to establish: (1) the intent to engage in criminal activity, and (2) the commission of one or more overt acts which constituted a substantial step towards the commission of the substantive offense, in this case possession of cocaine for distribution. *United States v. Williams*, 704 F.2d 315 (6th Cir.1983) *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983).

It is beyond peradventure that the first element of the offense, namely the intent to engage in criminal activity, was satisfied when Reeves actively and deliberately solicited participation in the illicit drug trade. The testimony was uncontradicted that

Reeves sought out drug smugglers because he wanted easy money and knew that the fastest way to acquire that easy money was through active involvement in the lucrative drug business.

Using the theory of constructive possession, the government argued that Reeves attempted to possess cocaine for distribution. "Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *U.S. v. Craven*, 478 F.2d 1329, 1333 (6th Cir.1973), *cert. denied*, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973); *U.S. v. Williams, supra; U.S. v. Martorano*, 709 F.2d 863, 866 (3rd Cir.1983), *cert. denied*, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983). Thus, in the case at bar, an issue of consequence is whether or not Reeves knowingly exercised, at any given time, a direct or indirect control over the substance he believed to be cocaine. A review of the record leads to the inescapable conclusion that Reeves did in fact exercise such control.

The objective of the overall transaction here in issue was the transportation of the substance believed to be cocaine from an unknown geographical location to the immediate vicinity of Wayne County, Tennessee for ultimate distribution to customers. To accomplish the objective of the transaction, two conditions were required to be satisfied, namely (1) a safe drop site for the substance believed to be cocaine had to be located, and (2) protection of the substance believed to be cocaine at the drop site and its safe passage from the vulnerable drop site to a safer haven for ultimate delivery to customers. In the case at bar neither of the two conditions could have been satisfied without the defendant Reeves. To accomplish the objectives of the transaction, Reeves, of necessity, was required to exercise direct or indirect control of the substance he believed to be cocaine from its unknown geographical source to its Wayne County intermediate destination for distribution by Thune to customers. For all practical purposes, the control of the sham

substance was relinquished to Reeves for transportation from its unknown geographical source to the area where his protective custody ended. Implicit of the control exercised by Reeves was the selection of a safe drop site which location was exclusively within his knowledge, discretion and control. By exercising his exclusive judgment in designating the safe drop site, he controlled the air route to be followed by the substance he believed to be cocaine from the unknown geographical source to the drop site coordinates in Wayne County as marked by the pilot on his aeronautical chart. He controlled the substance he believed to be cocaine at the drop site by insuring against any outside interference with the air drop. He controlled the substance he believed to be cocaine during its transportation from the vulnerable drop site to a safe haven by exclusively determining the route to be followed by the motor transport of the substance he believed to be cocaine from the drop site through his official territory from which Thune could implement his distribution of that substance to customers.

In the case at bar, the evidence adduced at trial disclosed that Reeves performed the following overt acts: (1) actively solicited drug smugglers to buy his services; (2) selected and disclosed to the drug smugglers the remote site known only to himself where drugs could be safely dropped; (3) deceived the sheriff and others to protect the purported cocaine smugglers and the air drug drops from detection; (4) actually participated in two separate drops and protected the two purported drug dealers instead of arresting them and confiscating the substance he believed to be cocaine; (5) volunteered to kill anyone who interrupted, interfered with or observed the drug drops; (6) provided security and safe passage for the substance believed to be cocaine from the vulnerable drop site through his official territory to a safer location; (7) agreed to assist Thune in the sale of cocaine; (8) accepted the sum $500.00 and $1,000.00 as payment for his services for ensuring safe delivery of the substance he believed to be

cocaine from its unknown geographic location to the remote drop site in Wayne County, Tennessee for distribution by Thune, all in furtherance of committing the underlying substantive offense of attempting to possess and distribute cocaine. The evidence demonstrated a unique dominion and control that was exercised by Reeves in ensuring the safe delivery of the sham cocaine to Thune from · its unknown geographic location to the drop site in Wayne County selected by him and thereafter by providing security for the cocaine from the vulnerable drop site to a safe location for distribution by Thune. Reeves was an integral part if not the keystone of the entire drug operation which was calculated to expeditiously place the substance he believed to be cocaine into the mainstream of a distribution system believed to be operated by Thune. Thus, the evidence taken in its entirety weighed heavily against Reeves and supported the jury's verdict.

For the foregoing reasons, the verdict of the jury and the judgment of the district court is hereby AFFIRMED.

CHURCHILL, District Judge, dissenting.

I respectfully dissent because, in my opinion, there was insufficient evidence to support a conviction on either count.

The only participants in the sham transaction giving rise to the defendant's convictions, other than the defendant, were federal agents acting as cocaine distributors. This is significant because the defendant could not have been charged with aiding and abetting or with conspiracy. Rather he was convicted of two counts of attempted constructive possession of cocaine with intent to distribute.

I take no exception to the definition of constructive possession in the majority opinion nor with the issue therein defined.[1]

It is my opinion, however, that the evidence did not justify a jury in finding that the defendant was in constructive possession of the substitute substance. He did not handle it. He did not enter a vehicle in which a substance was transported. He suggested an area for an airplane drop and then acted as a mere guard.

I likewise do not take issue with the statement of policy factors set forth in the majority opinion. The defendant's conduct was reprehensible but, in my view, he did not commit the offense with which he was charged. The end does not justify the means.

---

**1.** In at least one circuit, the concept of constructive possession may be more restrictive. The Eleventh Circuit Pattern Jury Instruction definition of possession includes the following more restrictive language. "A person who has direct physical control of something on or around his person is then in actual possession of it. A person who is not in actual possession, but who has both the power and the intention to later take control over something either alone or together with someone else, is in constructive possession of it." I do not suggest that the rule in this circuit is this narrow. The definition in the majority opinion is an expansive definition which has been given a uniquely expansive application.