**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Steven R. WALKER, Defendant–
Appellant.**

**No. 90–5284.**

United States Court of Appeals,
Sixth Circuit.

Argued May 3, 1991.

Decided Aug. 11, 1992.

Louis DeFalaise, U.S. Atty., Robert F. Trevey, Asst. U.S. Atty., Karen K. Caldwell, U.S. Atty. (argued and briefed), Lexington, Ky., for plaintiff-appellee.

David Russell Marshall (argued and briefed), Nicholasville, Ky., for defendant-appellant.

Before: NELSON and NORRIS, Circuit Judges; and ALDRICH, District Judge.*

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

ALAN E. NORRIS, Circuit Judge.

Defendant, Steven Roy Walker, appeals his convictions and sentences for acquiring and obtaining possession of prescription narcotics by misrepresentation, fraud, deception, and subterfuge in violation of 21 U.S.C. § 843(a)(3).[1]

Because the overriding issue on appeal is defendant's contention that the district court erred when it ruled that possession of a prescription is constructive possession of the drug, and that issue has not been addressed previously by our court, we discuss it below. All other issues raised by the appeal are addressed in an unpublished appendix to this opinion.

### I.

Defendant, a sheriff in Kentucky, suffered from Osgood–Slaughters disease, which led to a softening of the bones in his knees during adolescence. This condition caused stress to his joints and resulted in degenerative changes and acute arthritis in the knee. Defendant had received medical treatment for his knees since 1973 when he had the first of several major knee surgeries. Due to the knee problems, he was given regular prescriptions for narcotic pain medication and became addicted to Percocet and other potent narcotics.

In order to alleviate the pain in his knee and satisfy his addiction, defendant sought treatment at various emergency room facilities throughout Eastern Kentucky. He told physicians about his joint problems, but did not tell them about the narcotic pain medication he was receiving from other sources, or that he had recently seen other physicians for the same problem. He also told the physicians that he was in town for a reason unrelated to his need for medication.

Defendant was indicted on February 1, 1989 on eighty-nine separate offenses of violating the provisions of 21 U.S.C.

---

1. "It shall be unlawful for any person knowingly or intelligently ... to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge...." 21 U.S.C. § 843(a)(3) (1986).

§ 843(a)(3), based upon the fraudulent acquisition of prescription pain medication. Fifty-one of these counts were ultimately dismissed and, on December 6, 1989, a jury determined that defendant was guilty of thirty-five of the remaining charges. He was sentenced to one year on each of the thirty-five counts to run concurrently.

It was defendant's position at trial that the statute required the government to prove not only that he procured the prescriptions by fraud but, also that he used the prescriptions and actually received the drugs. On appeal, he challenges the district court's ruling that a showing that the prescriptions were fraudulently obtained is proof of constructive possession and tantamount to possession of the controlled substances themselves. Defendant argues that possession of a prescription is not the equivalent of possession of a controlled substance under 21 U.S.C. § 843(a)(3), because too many intervening actions must occur before the holder of the prescription can obtain the drugs. He argues, in effect, that possession of a prescription obtained through misrepresentation is different and less culpable conduct than fraudulently obtaining possession of the drug itself.

 The term "possession" is not defined in the Controlled Substances Act. Courts long have utilized the concept of "constructive possession" in the context of criminal law to cover situations in which the defendant does not have actual possession but, instead, "knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir.1973). Numerous courts have relied upon this theory of dominion and control to support convictions for illegal possession of controlled substances. *See, e.g., United States v. Reeves*, 794 F.2d 1101

(6th Cir.1986) (defendant had constructive possession of controlled substance when he arranged for drop-off site and escorted car allegedly containing cocaine); *United States v. Williams*, 503 F.2d 50 (6th Cir. 1974) (defendant had constructive possession of drug-filled suitcase even though he had flown to Cleveland and suitcase was accidently left in Chicago by the airline; defendant's intention had been to reclaim bag). However, it is not at all clear that one who unlawfully obtains a prescription for narcotics has the power, as well as the intention, to possess the drugs listed in the prescription.

In determining that the government was not required to demonstrate that defendant actually received the drugs, the trial court drew an analogy between defendant's possession of a prescription to a situation where a person has possession of the key to an automobile, pointing out that the person has the exclusive means of access to the vehicle and, thus, has dominion and control over the contents of the vehicle. *See United States v. Damsky*, 740 F.2d 134, 139 (2d Cir.1984). We do not find the analogy persuasive. In the absence of an indication in the record that, according to Kentucky law a pharmacist is under a duty to fill every prescription presented to him, a prescription cannot be said to serve as a key to the pharmacist's drug chest. A prescription is a direction to a pharmacist for the preparation and administration of medicine;[2] it is not a form of commercial paper transferring to its holder some right or title to a quantity of medicine. Instead, it permits the pharmacist to dispense, and its holder to obtain, certain controlled medications. Because a prescription by itself does not entitle its holder to unconditional access to the drugs prescribed, a prescription is not tantamount to possession.[3]

---

2. Webster's Third New International Dictionary 1792 (1981).

3. According to the *Pharmacy Law Digest* (1984), a pharmacist has the right to refuse to fill a prescription for good reason. A good reason may be any of the following:

 (a) failure to have the prescribed drug in stock;

 (b) [s]uspicion that the prescription is a forged or fictitious writing;

 (c) the pharmacist may distrust his ability to fill the prescription;

 (d) the pharmacist may believe that the prescription will be harmful to the patient because the prescribing doctor has erred, and

Because the trial judge's ruling did not require the United States to prove every element of the offense, we agree with defendant that his cause should be remanded for a new trial.

### III.

For the reasons stated in this opinion and in the unpublished appendix to this opinion, the conviction on Count 44 is dismissed and that count is remanded to the district court with instructions that it be dismissed. Defendant's convictions on all other counts are vacated and those counts are remanded to the district court for a new trial. We affirm the district court's disposition of the other issues raised by this appeal.

(e) in the case of a refill, the pharmacist may know that the refilling of prescription violates the law, if that be the case.

*Id.* at CL–73.