NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0042n.06

Case No. 15-5434

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

FILED
Jan 19, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE EASTERN DISTRICT OF |
| | ) | KENTUCKY |
| NEAL STONE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: SILER, BATCHELDER, and GRIFFIN, Circuit Judges.

**SILER**, Circuit Judge. Defendant Neal Stone appeals his conviction, arguing that the district court erred when denying his motion to suppress and his motion for acquittal on one count of the indictment. For the following reasons, we **affirm** the district court's decision.

**I. Factual and Procedural Background**

In 2014, Stone was indicted on several drug charges involving cocaine and heroin. Count One charged Stone with attempt to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count Two charged him with conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count Three charged Stone with distribution of heroin, in violation of 21 U.S.C. § 841(a)(1), and Count Four charged him with possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1).

Stone moved to suppress evidence that was seized from his residence by police. He argued that the search warrant affidavit failed to establish probable cause that he had engaged in criminal activity and failed to make a connection between his residence and the suspected crime. The affidavit in support of the search warrant was submitted on May 14, 2014, by Detective Jason Varney of the Berea Police Department.

The affidavit alleged that:

On May 9, 2014, Detective Varney was informed by a cooperating witness ("CW") that the CW could purchase heroin from Nicky Hampton. Hampton was supplied the heroin by a black male who was attending Eastern Kentucky University. The CW then told Detective Danny McGuire that the unknown black male would be arriving at Hampton's residence. Detective McGuire drove to Hampton's residence and observed a black male exit the residence carrying a backpack and then drive away in a Toyota Camry registered to Neal Stone. Detective McGuire followed the vehicle to Eastern Kentucky University, where he lost it in traffic. Detective McGuire later learned that Stone had an address of 818 Brockton, which is located on the Eastern Kentucky University campus.

After receiving this information on May 9, Berea Police gave the CW money to make a controlled purchase of one gram of heroin from Hampton. A few days later, Berea police conducted another controlled buy. The CW met with Hampton to purchase heroin, and Hampton informed the CW that she was supposed to meet her supplier but could not bring the CW with her to the meeting. The CW was dropped off in the Walmart parking lot. In the meantime, Madison County Sheriff's Detective Jasper White drove to 818 Brockton. Detective White saw Stone leave 818 Brockton and followed him to Richmond Centre, where he lost the car in traffic.

Police also followed Hampton and a white male, later identified as Josh Bogie, to Richmond Centre. Hampton and Bogie stopped at a Culvers Restaurant in Richmond, and Hampton entered the business and exited a short time later and got back in the vehicle with Bogie. They returned to the Walmart parking lot, where they picked up the CW. They then dropped the CW off in a Kohls parking lot.

Police stopped Bogie and Hampton in the Kohls parking lot. Bogie was in possession of a small amount of heroin. No narcotics were found on Hampton, but she claimed that she purchased the heroin found on Bogie from Catherine Leake inside the Culvers bathroom.[1] Hampton and Bogie agreed to cooperate with police by arranging a heroin deal with a man they knew as "Mike." Later that same day, Bogie made a consensually monitored and recorded call to "Mike," whom law enforcement believed to be Stone, to arrange the purchase of two grams of heroin.[2] "Mike" agreed, and the two planned to meet at Walmart. Detective McGuire rode with Bogie and Hampton to Walmart, and Detective White observed Stone and Leake exit 818 Brockton and leave the area in the red Toyota Camry registered to Stone. Detective White followed the vehicle to Richmond Plaza. Stone told Bogie to meet at McDonald's and to have Hampton enter the McDonald's bathroom, where Leake was waiting. Detectives encountered Leake inside McDonald's, and Stone as he sat in his car outside of the restaurant. No drugs were found in Stone's vehicle or in his possession. Leake was arrested and was searched during the booking process, when a small amount of heroin was discovered.

On May 14, 2014, based on the above information, Detective Varney executed a state search warrant for 818 Brockton. During the search, law enforcement located and seized a black

---

[1] The affidavit states that Hampton told Detective McGuire that she purchased the heroin from "Neal Stone's girlfriend (Catherine Leake)."

[2] Audio recording reveals that Bogie addressed the person who answered the call as "Big G."

backpack which contained Stone's identification, several baggies containing heroin, $520 of police buy money, scales, and syringes.

Later in May 2014, Detective McGuire was informed that Christopher Jordan was attempting to post a $30,000 bond for Leake. Police contacted Jordan, who had acted as a police informant. Police seized the $30,000 bond money and then worked with Jordan to execute a reverse sting. This involved Jordan's providing Stone with a kilogram of cocaine so that Stone could get back the $30,000 that was seized from Jordan when Jordan attempted to post Leake's bond. After Stone sold the cocaine, he was to keep $30,000 and then give the remaining profit to Jordan. Jordan testified that Stone agreed to this transaction, and the two of them discussed the amount of cocaine and the sale price. Jordan said that Stone originally thought that Jordan was lying about being able to get the cocaine and that they also discussed a sale of marijuana in addition to the cocaine. Jordan testified that before the transaction, he told Stone that Stone was to meet him to pick up the cocaine but that Jordan would have to go back to Louisville to get the marijuana. Jordan stated that he told Stone to "come get this and I got to drive back to Louisville to get the weed" because "they don't like weed and coke to travel together because weed kind of stinks and the police dogs can alert, you know, on it pretty easy." Jordan also stated that during the buy, he unzipped the bag he was carrying and showed Stone the two bricks of fake "cocaine" before giving the bag to Stone in exchange for cash.

Stone was arrested in August 2014. His first motion to suppress the results of the May search warrant was denied by the district court. Stone again moved for suppression and for an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to challenge the results of the search warrant. The district court denied the motion and declined to hold a hearing. Stone proceeded to a jury trial. He filed timely motions for judgment of acquittal, which were both

denied. Stone was found guilty on all four counts. He was sentenced to 120 months' imprisonment. The issues on appeal are whether the district court properly denied the motion to suppress and whether the district court properly denied Stone's motions for acquittal.

## II. Motion to Suppress

### A. Standard of Review

When reviewing a district court's denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law de novo. *United States v. Rose*, 714 F.3d 362, 366 (6th Cir. 2013). We also consider the evidence in the light most favorable to the government. *United States v. Beauchamp*, 659 F.3d 560, 565-66 (6th Cir. 2011).

### B. The Warrant Affidavit Contains Probable Cause

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. "Probable cause is defined as 'reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion.'" *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir. 1990)). When reviewing an affidavit for a search warrant, a judge must make a "practical, common-sense decision" based on all the circumstances, including the veracity and basis of knowledge of individuals providing hearsay information, to determine if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The judge must also determine that a nexus exists between the evidence sought and the place to be searched. *Rose*, 714 F.3d at 366. The inference that evidence of drug trafficking will be found at the residence of a person who is engaged in drug trafficking may go toward establishing a sufficient nexus. *See United States v. Gunter*, 551 F.3d 472, 482 (6th Cir. 2009).

A judge's decision to issue a warrant is afforded great deference. *See United States v. Kenny*, 505 F.3d 458, 460-61 (6th Cir. 2007). When such a decision is challenged by the defendant, the reviewing court looks only to the four corners of the affidavit to determine if there was probable cause. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (citing *United States v. Pinson,* 321 F.3d 558, 565 (6th Cir. 2003)). A decision to issue a warrant should only be reversed if the judge arbitrarily exercised his or her discretion. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc). A line-by-line approach to scrutinizing an underlying affidavit is therefore inappropriate; the reviewing court should determine simply whether the judge had a "substantial basis" for concluding that a search would "uncover evidence of wrongdoing." *Id.* (quoting *Gates*, 462 U.S. at 236).

Furthermore, there is "a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). But, "a search warrant is invalid when the supporting affidavit contains a statement, necessary to the finding of probable cause, that is later demonstrated to be false and included by an affiant knowingly and intentionally, or with a reckless disregard for the truth." *United States v. Duval*, 742 F.3d 246, 250 (6th Cir. 2014) (citing *Franks*, 438 U.S. at 155-56). *Franks* also applies to cases where an affiant intentionally omitted information in an affidavit, which is critical to the probable cause determination. *Id.* A defendant may request an evidentiary *Franks* hearing if he "raises a substantial question as to whether the affidavit supporting the search warrant contained materially false information." *United States v. Caldwell*, 114 F. App'x 178, 181 (6th Cir. 2004) (citing *Franks*, 438 U.S. at 156). This requires making a "substantial preliminary showing" of knowing or reckless falsity. *Id.* at 182. If the defendant is able to show deliberate falsity or reckless disregard for the truth, those portions of the affidavit are set aside, and the remaining

content is analyzed to determine if it supports probable cause. *Franks*, 438 U.S. at 171-72. Thus, the offending information must be essential to a probable cause finding. *Id.* Innocent or negligent mistakes are not enough. *Id.* at 171.

Stone first argues that the affidavit does not establish probable cause for the search of his residence. He claims that there was no meaningful corroboration of the information in the affidavit and points to several alleged discrepancies or misrepresentations, such as Stone's name being inserted in place of "Mike" and "Big G" in the affidavit when no source identified Stone as going by those names. He also states that the affidavit falsely represented that on May 9, 2014, officers saw an "unidentified black man" drive away from Hampton's residence. Detective McGuire testified that he saw the man and vehicle registered to Stone at Hampton's residence on May 8, 2014. A controlled buy occurred on May 9, 2014, so Stone argues that when the date is corrected, there is no connection between Stone, the "unidentified black male," and the events on May 9, 2014. He also argues that the affidavit does not explain how the police determined that (1) he lived at 818 Brockton Apartments, (2) Leake obtained heroin from Stone, or (3) drug-related activity occurred at 818 Brockton. Furthermore, Stone claims that the search warrant affidavit establishes no nexus between the alleged criminal activity and Stone's residence.

Reviewing Detective Varney's affidavit, we find that probable cause was established. The affidavit is thorough and explains how police saw a black male exiting Hampton's residence. Detective McGuire observed this man exit in a car registered to Stone. Detective McGuire later determined that Stone had an address of 818 Brockton and saw Stone leave 818 Brockton in his car on two more occasions and Stone and Leake exit the 818 Brockton residence together on one of these occasions. Both of these instances were close in time to drug deals involving Hampton, Bogie, and the CW. As to Stone's argument that the affidavit is

misleading because Hampton and Bogie sometimes referred to Stone by different names, the affidavit clearly states that Hampton and Bogie knew Stone only as "Mike," and the references to Stone's name by those individuals are not intended as direct quotations. In addition, police observed Stone's movements and noted that those movements corresponded to known drug activity. As such, the police were not only relying on information provided by the CW but were also tracking Stone and other individuals and corroborating the informant's information.

Stone's assertion that additional information, such as how the police learned his address, should have been included in the affidavit does not negate all the evidence included in it. *See Allen*, 211 F.3d at 975 ("[An] affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added."). Moreover, Stone's attempt to reference the trial testimony about the discrepancy in the date goes outside the "four corners of the affidavit." *See Brooks*, 594 F.3d at 492. Even so, the actions are only one day apart, and there were other facts suggesting Stone's involvement in the drug deals. Regarding Stone's allegation that there was no nexus between his house and drug-dealing activity, it is correct that a warrant affidavit must provide a "specific and concrete" connection between the place to be searched and evidence of criminal activity. *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016); *see also United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009) (no nexus because reliability of informant who identified defendant's residence as part of a drug trafficking operation was not established); *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (no nexus when defendant arrested at his residence for a non-drug offense but found to have some crack cocaine on his person). This is not a case where police used uncorroborated information from a potentially unreliable informant or failed even to watch the defendant's home. Here, the affidavit establishes that police saw Stone leave his residence on several

occasions, including once with Leake, and go to locations of known drug deals, as provided by the CW. Importantly, police observed Stone leave his residence immediately following a recorded phone call discussing an imminent drug deal, and police then followed Stone to the location discussed in the call and made contact with him outside of McDonalds. The affidavit provided a connection between the CW, Hampton, and Stone, and presented probable cause that at these drug deals, which occurred soon after police saw Stone leave his residence, Stone supplied the other individuals with drugs.

A judge reviews an affidavit using a "totality of the circumstances" approach, and "may afford 'considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found and [is] entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the crime and type of offense.'" *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008) (quoting *United States v. Bethal*, 245 F. App'x 460, 465 (6th Cir. 2007)). Based on all the information presented in the affidavit, the judge had a substantial basis to believe that evidence of criminal activity would be located at Stone's residence, and no evidence suggests an arbitrary exercise of discretion.

Finally, Stone presents the court with a list of allegedly false statements and omissions in the affidavit, many of which are discussed above, such as the discrepancy with the dates and the use of the names "Mike" and "Big G." Stone argues that once these statements are removed, the affidavit cannot support probable cause. Stone fails, however, to show that these statements are false or were made intentionally or with a reckless disregard for the truth. *See Caldwell*, 114 F. App'x at 181. The affidavit stated that the officers learned Stone's identity after observing his car at Hampton's residence and then checking the registration. Nothing suggests that Detective Varney's references to Stone's name in the affidavit—when the individuals actually referred to a

person named "Mike" or" Big G"—are meant as direct quotes, especially as the affidavit clearly states that Hampton and Bogie knew Stone only as "Mike." Based on this information, it is apparent that Detective Varney did not make an intentional or reckless misstatement as to Stone's identity. As to the date being listed as May 8 versus May 9, the government contends that the date is merely a typographical error. "A defendant cannot demonstrate entitlement to a *Franks* hearing by merely identifying typographical errors in the affidavit." *United States v. Frazier*, 423 F.3d 526, 539 (6th Cir. 2005). Stone offers only speculation that this date was intentionally or recklessly wrong, which is not enough to make a substantial preliminary showing of knowing or reckless falsity. Regarding the other challenged statements not discussed in depth here, Stone again provides only conclusory assertions that they were intentionally false or made in reckless disregard of the truth. As such, we find that the affidavit established probable cause.

### III. Motion for Acquittal

#### A. Standard of Review

When reviewing a district court's denial of a motion for judgment of acquittal due to insufficient evidence, we ask "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Lloyd*, 10 F.3d 1197, 1210 (6th Cir. 1993) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)).

#### B. The District Court Properly Denied the Motion for Acquittal

Stone moved for a judgment of acquittal on all counts at the close of the government's case-in-chief based on insufficiency of the evidence. The district court denied the motion. Stone did not put on any evidence after the government rested, but he renewed his motion for acquittal, which was again denied. The jury found Stone guilty of all four counts, including attempt to

possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C §§ 841 and 846.

Stone now challenges the denial of the motion for acquittal only as to the charge of attempt to possess with intent to distribute cocaine. To convict a person of attempt, the government must prove a defendant's intent to commit the proscribed criminal activity along with the commission of an overt act that qualifies as a substantial step toward the commission of the criminal activity. *See United States v. Bilderbeck*, 163 F.3d 971, 975 (6th Cir. 1999). The overt act must "mark defendant's conduct as criminal in nature." *United States v. Pennyman*, 889 F.2d 104, 106 (6th Cir. 1989) (quoting *United States v. Reeves,* 794 F.2d 1101, 1103-04 (6th Cir. 1986)). That is, the conduct "must unequivocally corroborate the required subjective intent to purchase or sell actual narcotics." *Id.* (quoting *United States v. Pennell*, 737 F.2d 521, 525 (6th Cir. 1984)). In the instant case, the proscribed criminal activity is possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841. The elements of that offense "are that the defendant: '(1) knowingly, (2) possessed a controlled substance, (3) with intent to distribute it.'" *United States v. Russell*, 595 F.3d 633, 645 (6th Cir. 2010) (quoting *United States v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006)). As with proof of intent, proof of knowledge is rarely shown by direct evidence. *United States v. Scruggs*, 549 F.2d 1097, 1104 (6th Cir. 1977). "Intent to distribute can be inferred from the possession of a large quantity of drugs, too large for personal use alone." *United States v. Jackson*, 55 F.3d 1219, 1226 (6th Cir. 1995) (citing *United States v. Faymore*, 736 F.2d 328, 333 (6th Cir. 1984)).

During trial, Jordan testified about the reverse sting where he agreed to provide Stone with cocaine to sell in order to get back the seized $30,000 used to post Leake's bond. Stone claims that he believed he was taking possession of marijuana, not cocaine, from Jordan, so he

failed to have the requisite specific intent for the attempt crime. Although Jordan testified that he and Stone had originally talked about both a cocaine and a marijuana deal, Jordan said he told Stone that Stone was to meet him to pick up the cocaine but that Jordan would have to go back to Louisville to get the marijuana. Jordan also testified that he unzipped the bag and showed Stone the two bricks of "cocaine." Furthermore, during the transaction, which was being recorded, detectives heard Stone say several times that he thought Jordan was going to provide him with weed, yet he still accepted the bag of cocaine.

This is enough evidence from which any reasonable fact finder could find all the elements of the crime beyond a reasonable doubt. Even if Stone showed up to meet Jordan expecting to receive marijuana, the facts show that Jordan told him that he did not have the marijuana and that the current deal was for cocaine. Nothing suggests that Jordan tried to trick Stone into thinking that the current deal was still about marijuana. Our job now is simply to review this evidence and determine if any rational finder of fact could infer that Stone had the specific intent to possess cocaine with the intent to distribute, and to conduct the review in a light most favorable to the jury's verdict. The evidence supports this conclusion, and as such, the district court did not err in denying the motion for acquittal.

**AFFIRMED.**